# COURTS OF APPEALS,
## STATE OF KANSAS.

### SOUTHERN DEPARTMENT.
#### EASTERN DIVISION.

### F. E. CRANE v. C. S. COX AND C. W. GOODIN.
#### No. 152.

1. VERDICT — *based on conflicting testimony not disturbed.* The verdict of the jury, being based on conflicting evidence and approved by the trial court, will not be disturbed.

2. PRACTICE IN DISTRICT COURT—*separate trials in this case not awarded.* In an action on a promissory note against two defendants, one the guarantor and the other the maker, the latter pleaded want of consideration and the fraud of his codefendant in procuring the note as a defense, and asked that the note sued on be declared void and that he have judgment against his codefendant for the amount he had been obliged to pay in settlement of another note given at the same time and in the same transaction with the one sued on. *Held,* that said guarantor's demand for a separate trial of the issues between himself and the maker of the note was properly overruled.

3. INSTRUCTIONS—*examined and approved.* Instructions given and refused examined, and the action of the trial court in respect thereto approved.

Error from Franklin District Court. Hon. A. W. Benson, Judge. Opinion filed July 31, 1897. *Affirmed.*

This is a suit on a "lightning-rod" note. One Webb, by representing that a large part of the rod would be furnished free, induced C. S. Cox and his wife to sign a contract for the rodding of Cox's barn.

( 405 )

Afterwards plaintiff in error superintended the putting up of the rod, and demanded in payment one hundred and seventy-four dollars. Cox protested, but finally yielded to pressure and threats on the part of Crane, and gave him twenty-five dollars in cash and two notes payable to F. J. Webb or bearer, one for forty-nine dollars, and one for one hundred dollars. The forty-nine dollar note was sold by Crane to Goodin. Crane guaranteed the payment of this note. Goodin sued Cox and Crane on this note. Cox set up that it was obtained by fraud and was without consideration, and also that he had been obliged to pay to an innocent holder of the other note one hundred dollars and interest thereon. He asked that the forty-nine dollar note be canceled, and that he have judgment against Crane for one hundred dollars and interest. The answer also alleged, that Cox's mind was weak and his understanding not strong, and that Webb and Crane knew his condition; that Webb overreached him by getting him to sign a contract purporting to be in duplicate but not really so, one of which was read by Webb to him, and left with him, and the other taken by Webb and turned over to Crane; that according to the counterpart kept by him and the figures made at the time the pretended duplicates were signed, the lightning rod would have cost only $22.50; that when Crane came to put up the rod he induced Mrs. Cox, in the absence of her husband, to give him their counterpart of the contract, and that Crane, after he had put up the rods, refused to show it to Cox but figured from the one which Webb had taken with him; and that Cox never knew until that time that there was any difference in the pretended duplicates, having relied on Webb's representations regarding them.

The answer also averred that Crane threatened that if Cox did not sign the notes he would send the sheriff after him ; that he would not allow part of the rod free, as Webb had promised and as was stated in the counterpart of the contract Cox had held ; that if he did not sign them he would make him pay $243 and costs ; that Cox believed he could do as he threatened, and that Crane otherwise intimidated him.    The evidence was conflicting on some points, but it appears that Cox was a deaf-mute until he was about twelve years old, and that he was taught in an institute for the deaf and dumb in the State Illinois, and also in a similar institute in the State of Kansas, to speak, and to understand what was said by others ; but such understanding came more from close observation of the lips of the one speaking than from any improvement in his hearing.    He could read and write and was fairly well versed in arithmetic.    He was honest and of a trusting disposition, believing every man honest until convinced to the contrary by evidence of dishonesty.    He was also timid and excitable.    His brother advised him generally in important transactions.    There was evidence tending to sustain the averments of his answer.

The contract was not introduced in evidence, but a blank exactly like that on which it was written was introduced.    It contains an agreement to pay seventy-five cents per foot for —— number of feet of rod, and the following consecutive sentences, the first of which runs to the end of the line :

" Points and braces to be counted as twenty feet of rod Each, said building to be ornamented free of cost."

There was no period after the word " rod," and it seems that Crane's plan was to read these two sentences together to the end of the word " each," and to figure

408        CRANE v. COX.

S. Dept.            Opinion.    Milton, J.            6 Kan. App.

accordingly. In this way the amount to be paid was greatly increased.

The verdict of the jury was for Cox as against Goodin and as against Crane, but the court entered judgment for Gooodin as against Cox, upon the special findings of the jury, on the ground that Goodin was an innocent purchaser. Judgment was also rendered for Cox against Crane for $108.50, upon the verdict of the jury.

*John W. Deford,* for plaintiff in error.

*J. D. Snoddy* and *Wm. H. Clark,* for defendants in error.

MILTON, J.   The verdict in this case was based on conflicting evidence, and, having been approved by the trial court, will not be disturbed by this court. We cannot refrain from remarking that it seems to be a righteous verdict.

1. Verdict based on conflicting evidence not disturbed.

Plaintiff in error demanded a separate trial in the court below of the issues between him and Cox, which demand the court refused. He claims there was error in this ruling. We think the ruling was correct. The notes sued on by Goodin and the note which Cox had paid, were brought into existence and given currency by the action of Crane. They both grew out of the same transaction, and it was proper to try the whole issue as between the man who claimed to have been defrauded and the party who was charged with the fraud.

2. Separate trials not awarded.

Plaintiff in error also claims that it was error to admit the evidence of Cox to the effect that his wife told him she had given their copy of the contract to Crane. The error in this was harmless for the reason that

further testimony of this witness showed that he saw Crane have the copy of the contract in question. The objection to the question asked Cox's brother, whether or not the latter had sufficient strength of mind to take care of himself in business dealings with shrewd, sharp men, ought, perhaps, to have been sustained; but if there was any error in permitting it to be answered it was waived, as the next question, which was similar and was even more specific as to the strength of mind of Cox, was asked and answered without objection. We see no merit in the other contentions in regard to the admission of testimony.

Complaint is made of the refusal of the trial court to instruct the jury to the effect that the amount of the profit to be made by Webb and Crane in the transaction with Cox was not material to the issues joined in the case, the testimony of Crane having shown that the profit on the sales of lightning rods was very large. As the only purpose in allowing that testimony to be introduced was to show a lack of consideration for the notes beyond the amount Cox understood he was to pay, it would appear that the instruction asked for was not required and was not proper.

3. Instructions examined and approved.

Plaintiff in error contends that the court erred in instructing the jury to the effect that, if they should find that the one-hundred-dollar note was sold by Crane to an innocent purchaser, and that this was done by Crane with the intent to cheat and defraud Cox, and that the latter thereby became bound to pay and did pay said note, then they would be authorized to find a verdict in his favor against Crane, with interest. It is claimed that there was no evidence whatever showing that Crane ever sold the hundred-dollar note. We find that the record shows that the

cashier of the bank at Blue Mound testified that he bought the note in question of a man by the name of Crane. This was some evidence, notwithstanding Crane denies having sold it, and was sufficient to warrant the court in placing the matter before the jury.

The judgment of the trial court will be affirmed.